UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-84-FJL

UNITED STATES OF AMERICA,

    Plaintiff,

v.

OSCAR R. QUINCOCES,

    Defendant.
_____/

FILED by _____ D.C.

NOV 29 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## DETENTION ORDER

Pursuant to Title 18, United States Code, Section 3142(f), on November 29, 2011, a detention hearing was held to determine whether the Defendant, OSCAR R. QUINCOCES, should be detained prior to trial. Having considered the factors enumerated in Title 18, United States Code, Section 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required or the safety of any other person and the community. Therefore, it is hereby ordered that the Defendant be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of Title 18, United States Code, Section 3142(i) the Court hereby makes the following findings of fact and statement of reasons for the detention:

    1.    The Defendant is charged by Criminal Complaint with using a facility, a computer and a cellular telephone, in interstate commerce, in an attempt to persuade, induce, or entice an individual under the age of 18 to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b).

Pursuant to Title 18, United States Code §3142(e), there is a rebuttable presumption applicable in cases of this type based upon the charges having been brought against the Defendant under Title 18, United States Code, Section 2422(b).

Pursuant to Title 18, United States Code, Section 3142(f)(1)(A), detention is permitted for certain crimes of violence. Title 18, United States Code, Section 3156(a)(4)(C), states that any felony charged under this statute is to be considered a crime of violence. Therefore, pretrial detention may be reasonably considered by this Court in determining whether or not the Defendant is a danger to the community and a presumption of detention is applicable pursuant to the statutory provisions set forth above.

At the outset of the Detention Hearing, counsel for the government requested that this Court take judicial notice of the facts set forth in the Criminal Complaint and Affidavit, a copy of which has been previously provided to counsel for the Defendant. This Court agreed to do so. Additionally, Agent Brian Ray of Homeland Security Investigations was present and testified during the Detention Hearing.

The Complaint establishes that Detective Ramos of the Boynton Beach Police Department began an investigation working in an undercover capacity on line portraying himself as a 15 year old male in an internet social website. This investigation began on or about October 9, 2011 in Palm Beach County, Florida. On that date, the UCO encountered an individual later identified as this Defendant. There were brief chats back and forth between the UCO and the Defendant on that date.

On or about October 11, 2011, the UCO again encountered an individual on line later determined to be this Defendant. During those on line chats, the substance of which are purportedly set forth in paragraph 7 of the Complaint, the UCO makes it clear that he is a 15 year old male. The Defendant is found asking the UCO if he has "done anything

2

with another boy." There are also questions by the Defendant of the UCO as to whether or not the UCO has engaged in any sexual activities with other males. On the bottom of page 5 of the Affidavit attached to the Complaint, the Defendant purportedly indicates that he would like to have oral sex with "younger guys." The Defendant also tells the UCO that he would try to get his friends to join in sometimes when he does that.

The Complaint goes on to reflect that the on line chats went on back and forth for some time and involved subject matters of a clearly sexual nature. On November 17, 2011, the UCO sent a text message to the screen name associated with this Defendant. The UCO told the Defendant that he would be in Port St. Lucie, Florida later that day. The Defendant responded by text message and asked the UCO to text him when the UCO arrived in Port St. Lucie.

A search of various databases by the Port St. Lucie Police Department for the phone number being utilized by the Defendant during these text messages/chats, revealed that the Defendant had previously used this same telephone to make a complaint to the Port St. Lucie Police Department.

On November 17, 2011, the Defendant agreed to meet the UCO at the Taco Bell on Gatlin Boulevard in Port St. Lucie, Florida. The meeting was set for approximately 9:00 p.m. Agents were placed on surveillance at the scene. Shortly after 9:00 p.m., the Defendant was seen to arrive in his vehicle. The Defendant stayed in the vehicle for a period of time. The Defendant then moved his vehicle and parked in a different spot and remained there for five to ten minutes before leaving the Taco Bell parking lot and pulling into the adjacent Walmart parking lot. As he did so, the signal was given and the Defendant was arrested.

During a search of the Defendant's vehicle, the cellular telephone utilized by the Defendant during this investigation was seized. Various of the on line chats were recovered as well as a photo of what the government submits is the Defendant's penis, which photograph was transmitted by the Defendant to the UCO.

The Defendant was read his <u>Miranda</u> rights immediately upon arrest. Agent Ray began questioning the Defendant in the rear of the patrol car and all discussions were recorded. The questioning of the Defendant continued in the back of the patrol car all the way to the office of Agent Ray. Agent Delavega was driving the vehicle and Detective Ramos who was acting in an undercover capacity, was also present with Agent Ray.

In his post-<u>Miranda</u> statement, the Defendant initially denied any involvement. Later the Defendant admitted that he was chatting on line but was there to meet an adult friend. When the Defendant was confronted with the on line chats with the UCO taken from his own telephone, the Defendant admitted that he was there to meet a minor at the Taco Bell.

During the Detention Hearing, Agent Ray testified that the Defendant did say something about that he might need a lawyer. Agent Ray stated that he stopped the questioning and made it clear to the Defendant that he had the right to an attorney and all questioning would stop if he wished to have an attorney. Agent Ray testified that this went on back and forth between he and the Defendant for approximately ten minutes to clarify as to whether or not the Defendant definitively wanted an attorney. At no time did the Defendant ask for a lawyer. All of this is recorded according to Agent Ray.

The Defendant presented no witnesses or evidence at the Detention Hearing. However, counsel for the Defendant argued that he should be released on a personal surety bond. Also, counsel for the Defendant requested additional time to contact the

4

Defendant's father who resides in Miami, Florida, and who owns his own home to determine whether or not the father would be willing to co-sign a bond. Counsel for the Defendant also requested additional time to revisit the issue of detention to see if there were other family or friends who would be willing to co-sign any bond this Court might be inclined to set in this case.

Counsel for the Defendant further argued that the Defendant was unemployed at the time of his arrest. However, he is a member of the union and works at nuclear power plants as a foreman. He was set to go back to work on November 21, 2011, but this intervening arrest prevented him from returning to work.

The Defendant has three adult children who reside in Broward County, Florida. He owns no property.

2. The pertinent history and characteristics of the Defendant are taken from the Pretrial Services Report as amended by counsel for the Defendant on the record. The Defendant was born in Cuba and is in the United States through "derived citizenship" according to U. S. Immigration and Customs Enforcement. His parents reside in Miami, Florida, and he has had contact with them as recently as a few days ago subsequent to his arrest. The Defendant is divorced and has three adult children who reside in Tamarac, Florida. He has a fourth adult child who resides in Kansas City. At the time of his arrest, the Defendant was residing in Port St. Lucie, Florida, renting a residence owned by a Franklin Martinez. The Pretrial Services Report reflects that the Defendant was presently residing with a 17 year old friend named Roger Smiley. As referenced above, the Defendant is unemployed and he does not own any significant assets.

The Defendant has prior convictions for misdemeanor traffic offenses for DUI, leaving the scene of an accident with property damage, and giving false information at an accident scene.

3. There is probable cause to believe the Defendant committed the offenses set forth in the Complaint. The weight of the evidence against the Defendant is substantial at this stage of the proceedings. As this Court stated on the record, even if the Defendant's father, family, and friends were willing to co-sign a bond, this Court is not inclined to set a bond based upon the totality of the evidence thus far heard by the Court. Therefore, the request to be permitted to revisit this issue is DENIED.

Further, the evidence thus far suggests strongly that the Defendant believed that he was communicating on line by text messages and/or chats with a 15 year old male. The discussions as proffered by the government and as set forth in the Complaint, clearly indicate that the Defendant was seeking a relationship of a sexual nature with a 15 year old. Further, the Defendant ultimately admitted that he had gone to the Taco Bell to meet the 15 year old. This arranged meeting, as the Complaint indicates, was agreed to by the Defendant. This Court finds the Defendant is a danger to the community and a risk of flight. He has not rebutted the statutory presumption applicable and shall be detained accordingly.

4. The Court specifically finds that there is no condition or combination of conditions which will reasonably assure the appearance of the Defendant as required or the safety of any other person and the community. Title 18, United States Code, Section 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that this Defendant presents a risk of flight and a danger to the community. The Court hereby directs:

a.  That the Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

b.  That the Defendant be afforded reasonable opportunity for private consultation with counsel; and

c.  That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** this _28th_ day of November, 2011, at Ft. Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc:
AUSA Russell Killinger
AFPD Panayotta Augustin-Birch
Pretrial Services
U.S. Marshal